[S. F. No. 20170.   In Bank.   Oct. 11, 1961.]

F. BRITTON McCONNELL, Insurance Commissioner, as Liquidator, etc., Plaintiff and Respondent, v. UNDERWRITERS AT LLOYDS OF LONDON et al., Defendants and Appellants; PASSETTI TRUCKING COMPANY, INC., Defendant and Respondent.

638

Carter, Terreo & O'Connell and David Terreo for Defendants and Appellants.

Theodore Tamba for Plaintiff and Respondent.

Walcom & Harmon and Leo J. Walcom for Defendant and Respondent.

SCHAUER, J.—In this suit for declaratory relief the contesting insurance companies, as well as their insured, Passetti Trucking Company, Inc., hereinafter called Passetti, seek a determination as to the liabilities of the respective companies with respect to claims for personal injuries made against the

insured. We have concluded that the trial court erred in holding that the only coverage was that provided by the policy issued by appellant Underwriters at Lloyds of London, hereinafter called Lloyds, and that the judgment should be reversed for further proceedings in accordance with the views hereinafter developed.

In March 1957 a Passetti truck was being driven on a California state highway by Passetti employe Bland. The truck was towing a portable air compressor which came loose and collided with the oncoming automobile of the Zuckers. The Zuckers sued Passetti, Bland, and the owner of the compressor, Rental Equipment Company, who had leased it to Passetti. Whereupon this declaratory relief suit was brought by Interstate, one of the companies from which Passetti had purchased insurance coverage.[1]

Passetti for many years had secured its liability insurance through the firm of Hollander and Strom, which it was stipulated was acting as the agent of Passetti. That firm was licensed as an agent of Interstate, but not of Lloyds, which also issued two policies (one of them excess) insuring Passetti. The trial court determined that the Interstate policy did not provide coverage for the compressor accident and that the Lloyds policies did. Judgment was entered accordingly, and this appeal was instituted. Thereafter the Zuckers recovered a substantial judgment against Passetti and Bland.

It was stipulated by the parties that (1) the accident would not have happened if the compressor had not been negligently attached to the truck; (2) the negligent persons were employes of Passetti as distinguished from officers of the company; (3) the compressor was not a "trailer" within the meaning of the California Vehicle Code and the definition of that word under then section 36[2] (now § 630), and that it was "special mobile equipment" as defined in then section 39[3]

---

[1] After this suit was filed, F. Britton McConnell, Insurance Commissioner, as liquidator of Interstate Indemnity Company, was substituted as plaintiff. However, for convenience plaintiff will be referred to as "Interstate."

[2] Section 36: "A 'trailer' is a vehicle designed for carrying persons or property on its own structure and for being drawn by a motor vehicle and so constructed that no part of its weight rests upon any other vehicle."

[3] Section 39: "'Special mobile equipment' is a vehicle, not self-propelled, not designed or used primarily for the transportation of persons or property, and only incidentally operated or moved over a highway, excepting implements of husbandry."

(now § 575) of that code, for which no license is required; (4) the Passetti truck was specifically mentioned in the Interstate policy.

As delineated in *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956), 46 Cal. 2d 423, 437-438 [4b, 11, 12] [296 P.2d 801, 57 A.L.R.2d 914], the following principles govern construction of insurance policies: "[A]ny ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. [Citations.] If semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates. [Citation.] If the insurer uses language which is uncertain any reasonable doubt will be resolved against it; if the doubt relates to the extent or fact of coverage, whether as to peril insured against [citations], the amount of liability [citations] or the person or persons protected [citations], the language will be understood in its most inclusive sense, for the benefit of the insured." (See also *Freedman* v. *Queen Ins. Co.* (1961), *ante*, pp. 454, 456-457 [1-3] [15 Cal.Rptr. 69, 364 P.2d 245]; *Prickett* v. *Royal Ins. Co. Ltd.* (1961), *ante*, pp. 234, 237-238 [14 Cal.Rptr. 675, 363 P.2d 907] [4-6].) However, if there is a conflict in meaning between an endorsement and the body of the policy, the endorsement controls.

Likewise, under the provisions of section 1651 of the Civil Code, the written or specially prepared portions of the policy control over those which are printed or taken from a form. (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956), *supra*, pp. 430-431 [4a, 5, 6] of 46 Cal.2d.)

The policies involved in this litigation will be examined in the light of these principles and from the point of view of the insured who paid the premiums and for whose benefit they issued, and who here claims that all the policies covered the compressor accident.

### Interstate Indemnity Policy

Under the heading "Insuring Agreements" the Interstate policy provided, so far as here material, that the company agreed with the insured as follows:

"I. Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury ... sustained by any person, caused by accident and arising

out of the ownership, maintenance or use of the automobile . . . .

"III. Definition of Insured: (a) With respect to the insurance for bodily injury liability . . . the unqualified word 'insured' includes the named insured . . . and also includes any person while using the automobile . . ., provided the actual use of the automobile is by the named insured" or with the insured's permission.

"IV. Automobile Defined . . . [T]he word 'automobile' means: . . . the motor vehicle or trailer described in this policy . . . ." The parties agree that "automobile" includes trucks and also, as already stated herein, that the Passetti truck which was towing the compressor was specifically mentioned in the Interstate policy; thus Passetti's employe Bland, who was driving the truck at the time of the accident, was an insured under the Interstate policy (see also paragraph III, quoted *supra*).

Under the heading "Exclusions," The Interstate policy provides that "This policy does not apply: . . . while the automobile is used for the towing of any *trailer* owned or hired by the insured . . . ." (Italics added.) No such exclusionary provision appears in the policy with respect to the towing of "special mobile equipment" such as the compressor here involved, stipulated by the parties to be *not* a trailer. (See fn. 2, *ante*.)

From the above-quoted provisions it appears that the Interstate policy provided coverage for the compressor accident. Construing the policy in its most inclusive sense, for the benefit of the insured (Passetti and its employe, Bland), Coverage A, which by its terms applies to any accident "arising out of the . . . use of" the truck would include the accident which arose out of use of the truck to tow the negligently attached compressor. If the company had intended to exclude coverage during such towing operations it could have expressly so stated in the policy, as was done with reference to the towing of trailers. For an accident caused by the towing of a trailer, whether negligently or carefully attached, the exclusion would appear to be effective. However, there is no exclusion applicable to the towing of "special mobile equipment." It follows that, under the above-reviewed principles of law, the policy must be held to provide coverage here. (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956), *supra*, 46 Cal.2d 423, 437 [12]; see also *Freedman* v. *Queen*

*Ins. Co.* (1961), *supra, ante,* pp. 454, 458 [10]; *Prickett* v. *Royal Ins. Co. Ltd.* (1961), *supra, ante,* pp. 234, 237 [4].)

By reason of the conclusion we have reached as to the proper construction of the Interstate policy in the light of applicable California rules, no useful purpose would be served by a discussion of various out-of-state cases relied upon by Lloyds.

### Lloyds Policies

The Lloyds policies will for the purposes of this area of discussion be treated as one policy. Further reference to the Lloyds excess policy will, however, appear hereinafter.

The Lloyds policy by Endorsement Number 8 is denominated "Comprehensive Public Liability Insurance Certificate." Paragraph numbered 1 is headed "Insuring Agreements." By this document "Lloyd's Underwriters . . . agree . . . A. To PROTECT THE NAMED ASSURED . . . against loss by reason of the liability imposed by law upon the Assured for damages from bodily injuries . . . by reason of: (i) Operations and work undertaken by the Assured applicable to the business of the Assured . . . . (vii) The ownership, maintenance or use of automobiles," *except* (as provided under "Exclusions") automobiles defined (in the words of the exclusion) as "*power driven vehicles, including vehicles attached thereto, . . . elsewhere than upon the premises.*" (Italics added.) For the purposes of this opinion it may be conceded that by reason of the exclusion clause last above quoted, Passetti was not covered by insuring agreement vii ("The ownership, maintenance or use of automobiles . . . including vehicles attached thereto . . . elsewhere than upon the premises"). But coverage under agreement vii, or lack thereof, is not controlling here. The coverage which is applicable is that provided by agreement i, designated "Operations and work undertaken by the Assured applicable to the business of the Assured." In this connection it is undisputed that by specific endorsement the policy covered operations on certain premises in San Jose, known as the Passetti jobsite, and that the compressor had been used in Passetti's business operations and had been negligently attached to the truck on those premises.

Lloyds contend, however, that by reason of specially prepared and typed (as distinguished from a printed form) Endorsement 9 to their policy, the question of the on "premises" clause liability is not even reached. Endorsement 9 declares that "It is agreed that coverage does not apply as respects

any claim . . . arising out of any one occurrence by reason of the ownership, operation, maintenance or control of any automobile, trailer, semi-trailer, tractor or any motor vehicle licensed for use on public highways."

Again construing all policy doubts or ambiguities for the benefit of the insured who purchased its coverage and against the insurer who prepared it, we are of the view that the Lloyds policy likewise covered the compressor accident here involved.

In the first place, Endorsement 9, on the exclusionary efficacy of which Lloyds relies, by its terms does not include the *compressor* here involved. The parties stipulated that the compressor is not a "trailer" and it was not "licensed for use on public highways."[4] Thus, Endorsement 9 is of no help to Lloyds with respect to accidents arising in connection with the compressor, which had been used on Passetti premises and in the course of Passetti's business operations and work.

In the second place, as already noted, the parties stipulated that the accident would not have happened if the compressor had not been negligently attached to the truck by Passetti employes. Such negligent attachment occurred on the job premises specifically covered by the Lloyds policy. Thus, liberal construction of the policy provisions in favor of the assured leads to the conclusion that the Lloyds policy likewise provided coverage for the compressor accident because it expressly covered Passetti's business operations on the job premises. Further, as pointed out by Passetti, if someone other than Passetti, through its employe Bland, had been towing the compressor (either on or off the highway) after it had been negligently attached by Passetti, it appears clear that Passetti would be held liable and that the Lloyds policy would cover. The fact that Passetti did both the negligent attaching and the towing should make no difference so far as Passetti's right to the coverage is concerned.

Lloyds pleads that it is forbidden to issue automobile coverage in this state. If it had issued a forbidden automobile policy the fact that the policy was illegal would not excuse

[4]Neither, of course, was it a "semitrailer," defined by section 550 (formerly § 37) of the Vehicle Code as "a vehicle designed for carrying persons or property . . . ." The compressor, as already related herein, was stipulated to be "special mobile equipment" which is "not designed or used primarily for the transportation of persons or property, and only incidentally operated or moved over a highway . . . ." (Former Veh. Code, § 39, now § 575.)

Lloyds from liability. Moreover, as already stated, the premises-operations provisions are effective to provide coverage here.

Lloyds further urges that its policy did not cover Bland, one of the two Passetti employes who negligently attached the compressor, and that inasmuch as the Interstate policy did cover him and he is at least one of the two negligent employes upon whom ultimate liability for damages occasioned by such negligence devolves (see *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956), *supra,* 46 Cal.2d 423, 428-429 [1-2]). Lloyds' policy should therefore not be held to cover the accident. Lloyds' policy defines ''assured'' as follows: ''The unqualified word 'Assured' whenever used includes not only the named Assured but also any partnership, executive officer or director thereof while acting within the scope of his duties as such.'' Under ''Insuring Agreement A'' Lloyds undertook ''To protect the named assured [Passetti Trucking Company] (hereinafter referred to as the Assured) (if a corporation to include its officers as officers of such corporation), against loss . . . .'' As already noted, the parties stipulated that the persons who negligently attached the compressor to the truck were Passetti employes as distinguished from officers of the company. It thus appears that the Lloyds policy did not cover Bland, one of the negligent employes.

In *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956), 46 Cal.2d 423, 440 [296 P.2d 801, 57 A.L.R.2d 914], because the record established that one line of insurance policies (Transport) afforded more than adequate coverage to the negligent employe (Mason) to meet the Leming judgment for personal injuries and there was no suggestion that that judgment could not be collected from Transport, we found it unnecessary to decide any further controversy as among the other parties to the litigation. In the case at bench, however, the *Zucker* judgment, as already stated, was rendered *after* the judgment in this declaratory relief suit and the record[5] here does not show its amount or whether it has become final. Further, Passetti asserts that Interstate became insolvent after the compressor accident (see *ante,* fn. 1) and that the *Zucker* judgment may not be collectible from Interstate.

---

[5]A letter sent to this court shortly before oral argument (and mentioned therein) which purports to relate certain events occurring subsequent to the trial of the case at bench is, of course, not a part of the record now subject to review.

Under such circumstances Passetti, who here claims coverage by both Lloyds and Interstate, from both of whom he purchased insurance policies, is entitled to have that coverage declared. Lloyds' contention on this point is without merit.

Lloyds next complains of the alleged lack of findings on material issues and that the remaining findings are vague and uncertain. These complaints, however, appear directed to Lloyds' contention that the compressor accident fell within only the scope of "automobile" coverage, that such coverage was provided by the Interstate policy but not by that of Lloyds, and that consequently the Lloyds policy should be determined to be inapplicable. But as a ground for reversal of the trial court's judgment holding that the Lloyds policy covers the accident, Lloyds also relies upon the rule that where, as here, the evidence is without conflict, this court is not bound by the trial court's interpretations of the insurance policies. (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956), *supra*, 46 Cal.2d 423, 429-430 [3] ; see also *Estate of Platt* (1942), 21 Cal.2d 343, 352 [4] [131 P.2d 825].) We have interpreted the premises-operations provisions of the Lloyds policy to provide coverage here, and it therefore appears that no useful purpose would be served by detailed consideration of Lloyds' attacks on the findings.

Lloyds contends, further, that it was the intention of both Interstate and Lloyds as well as of their insured, Passetti, to segregate Passetti's insurance coverage; that "automobile risks" were intended to be covered by Interstate and "nonautomobile risks" by Lloyds; that if the policies as written do not accurately express this agreement the Lloyds policy should be reformed to do so; and that the trial court erred to the prejudice of Lloyds in refusing to admit certain evidence offered by Lloyds in support of this contention. Again, however, inasmuch as the premises-operations provisions of the Lloyds policy, interpreted in favor of the insured, Passetti, are properly held to provide coverage to Passetti, reformation of the policy so that it states specifically that it covers only "non-automobile risks" would not assist Lloyds. (Of course, as related above, the policy already states, under "Exclusions," that it does not cover automobile risks "elsewhere than upon the premises.") Hence, further discussion of its arguments on this point appears unnecessary. It may nevertheless be noted that the witness Mr. Strom, who as insurance broker and agent of Passetti had secured both the Interstate and the Lloyds policies, testified that "It was my

intention to place licensed vehicles only in the Interstate policy to conform to the requirements of the Public Utilities Commission. When—it's conceivable that we could have unlicensed vehicles of many types that would obviously have to be covered by the comprehensive policy [Lloyds] that I purchased .... [T]he exposure created by the use of unlicensed equipment was intended not to be covered by Interstate ...." The compressor here involved was, as already stated, an unlicensed vehicle and not an automobile.

### Lloyds Excess Policy

Lloyds Excess Underwriters urge that if this court determines that both the Interstate and the Lloyds primary policy provide coverage to the compressor accident, the liability of the excess underwriters cannot attach until the combined limits of both the Interstate and the Lloyds primary policy have been exhausted. This contention is resisted by neither Interstate nor Lloyds primary underwriters and appears to be correct.

Both the Interstate policy and the Lloyds primary policy contain an "other insurance" clause providing for proportionate sharing of the loss with all other "valid and collectible insurance" against such loss.

The Lloyds excess policy provides, so far as here material, that "Liability under this Certificate shall not attach unless and until the Primary Insurers shall have admitted liability for the Primary Limit or Limits, or unless or until the Assured has by final judgment been adjudged to pay a sum which exceeds such Primary Limit or Limits." Under such circumstances it is held that the excess insurance does not attach until all primary insurance has been exhausted. (See *Peerless Cas. Co.* v. *Continental Cas. Co.* (1956), 144 Cal.App. 2d 617, 619 et seq. [301 P.2d 602], and cases there cited; *American Auto. Ins. Co.* v. *Seaboard Surety Co.* (1957), 155 Cal.App.2d 192, 199 [6b] [318 P.2d 84]; see also *American Auto. Ins. Co.* v. *Republic Indemnity Co.* (1959), 52 Cal.2d 507, 509 et seq. [341 P.2d 675].)

As to the case at bench, however, inasmuch as Passetti asserts that Interstate became insolvent after the compressor accident (see *ante*, fn. 1), it is noted that insolvency of a primary insurer gives rise to liability under the excess policy, after, of course, any other primary coverage has been exhausted. (See *Fageol T. & C. Co.* v. *Pacific Indemnity Co.* (1941), 18 Cal.2d 748, 751-752 [2a, 2b] [117 P.2d 669].)

The judgment is reversed with directions to the trial court to amend its conclusions of law and enter judgment declaring the relative and respective rights and obligations of the parties to this action in accordance with the views hereinabove expressed, Interstate and Lloyds to each bear its own costs on appeal and to share equally in paying the costs of Passetti.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.

Appellants' petition for a rehearing was denied November 8, 1961.