17 Cal.Rptr. 12, 366 P.2d 455]

[Sac. No. 7199. In Bank. Nov. 27, 1961.]

CONTINENTAL CASUALTY COMPANY et al., Plaintiffs and Respondents, v. ZURICH INSURANCE COMPANY, Defendant and Appellant; GENERAL INSURANCE COMPANY OF AMERICA, Cross-Complainant and Appellant.

30

Wilbur J. Russ for Defendant and Appellant.

Cooley, Crowley, Gaither, Godward, Castro & Huddleson and Augustus Castro for Cross-complainant and Appellant.

Johnson, Davies and Greve and Claire H. Greve for Plaintiffs and Respondents.

SCHAUER, J.—This is a declaratory relief suit to determine the respective liabilities of three contesting insurance companies with respect to a judgment rendered in favor of Roderick Gudger, as plaintiff, in a personal injury action against Jack Hiatt. There is also in issue a question as to the duty of two of the companies to contribute to the costs of defense and attorney's fees incurred by the third company in defending the personal injury action. We have concluded that the trial court correctly determined these issues, and that its judgment should be affirmed.

The controversy arose as follows: Simpson Redwood Company, hereinafter called Simpson, purchased timber from the United States Forest Service and hired Hiatt, an independent logger, to log and haul the timber. General Insurance Company of America, hereinafter called General, had issued a liability policy to Simpson, and Continental Casualty Company, hereinafter called Continental, had issued one to Hiatt. Simpson knew that Hiatt did not have sufficient trucks of his own to do the hauling, and agreed with Hiatt that Hiatt could hire trucks owned by one Waldkirch, to whom a policy had been issued by Zurich Insurance Company, hereinafter called Zurich. Thereafter Waldkirch supplied trucks with drivers to haul the logs to Simpson's mill.

In August 1956, one of the trucks owned by Waldkirch was being loaded with Simpson logs by Hiatt's employes at a landing in the woods, when one of the logs fell, injuring Gudger, who was the driver of the truck and an employe of Waldkirch.

Gudger sued Hiatt under the doctrine of respondent superior and recovered judgment for $20,000, which Hiatt paid in full.[1] The action against Hiatt was defended by attorneys employed by Continental. Hiatt had demanded of both Zurich and General that they defend the action and pay any judgment that might be rendered against him, but both refused.

Continental and Hiatt thereupon instituted this declaratory relief suit, and the trial court held that Zurich (the insurer for Waldkirch, owner of the involved truck) was primarily liable to the $15,000 limit of its policy, that Continental and General were liable for the balance of the Gudger judgment on a pro rata basis, and that the costs of defense of the Gudger action should be shared on a pro rata basis by all three insurers. This appeal by Zurich and General followed.

---

[1]For various reasons Gudger did not secure judgment against the involved employes of Hiatt.

## ALL THREE POLICIES COVER HIATT

The Zurich policy issued to Waldkirch provided liability coverage to Waldkirch for accidents involving the use of trucks owned by Waldkirch. Zurich concedes that Hiatt was an additional insured under provisions of its policy extending coverage to persons using the Waldkirch trucks. The limit of liability of the Zurich policy for the accident to Gudger is $15,000. As already indicated, the trial court held Zurich to be primarily liable for payment to that extent on account of the $20,000 Gudger judgment against Hiatt.

Continental concedes that as its named assured Hiatt is also covered by its policy.

General, however, questions whether its policy, issued to Simpson, as its named insured, covers Hiatt as an additional insured. ■ General's policy will therefore be examined in the light of the principles enunciated by this court in *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437-438 [4b, 11, 12] [296 P.2d 801, 57 A.L.R.2d 914] and recently reiterated on several occasions (see e.g., *Prickett* v. *Royal Ins. Co. Ltd.* (1961) 56 Cal.2d 234, 237-238 [14 Cal.Rptr. 675, 363 P.2d 907]; *Freedman* v. *Queen Ins. Co.* (1961) 56 Cal.2d 454, 458 [1, 2] [15 Cal.Rptr. 69, 364 P.2d 245]; *Exchange Cas. & Surety Co.* v. *Scott* (1961) 56 Cal.2d 613, 619 [2, 3] [15 Cal.Rptr. 897, 364 P.2d 833]; *McConnell* v. *Underwriters at Lloyds of London* (1961) 56 Cal. 2d 637, 640 [1-4] [16 Cal.Rptr. 362, 365 P.2d 418]) that any uncertainties in insurance policies, whether as to peril insured against, the amount of liability, or the person or persons insured, will be resolved against the insurer and in favor of imposing liability.

■ General's policy defines an "insured" as "any person while using an automobile owned or hired by the named insured [Simpson] . . . provided the actual use is with the permission of the named insured. . . ." The policy defines "hired automobile" as a "non-owned automobile used under contract with the named insured. . . ." As already stated, the evidence establishes and the trial court found, that Simpson consented to the hiring of the Waldkirch truck here involved, to be used in the performance of the contract between Simpson and Hiatt, the logger. The court further found and determined that the Waldkirch truck was a "hired automobile" as defined by General's policy. It is apparent that under the principles of construction hereinabove stated such determination is supported, if not actually required as

a matter of law, upon the facts of this case. ▮ General's suggestion that the language "permission of the named insured" as used in its policy should receive the construction given by the courts to permission within the context of former section 402 (now §§ 17150-17157) of the Vehicle Code is answered to the contrary by our decision in *Exchange Cas. & Surety Co.* v. *Scott* (1961), *supra,* 56 Cal.2d 613, 619-622 [1-10].

▮ General urges, nevertheless, that because the injuries to Gudger were occasioned through the alleged negligent dropping of a log by Hiatt's employes during loading of the Waldkirch truck, Hiatt does not come within its policy definition of an "insured" as any person "while using" the truck.

Insuring Agreement I of General's policy declares that the policy provides coverage

"(a) for damages . . . because of bodily injury . . . sustained . . . by any person or persons;

"(b) for damages because of injury to . . . property . . . arising out of the ownership, maintenance or use of automobiles, *including* the *loading* and unloading thereof. . . ." (Italics added.)

General contends that because with respect to *property* damages its policy expressly included the loading and unloading of automobiles, the absence of such an express inclusion with respect to bodily injury coverage indicates its intent that no such coverage was provided. This contention is without merit. As to liability "imposed upon him [the insured] by law . . . because of bodily injury," the coverage is unlimited insofar as concerns the *cause* of the bodily injury. The most that can be said is that the policy is uncertain on the point. And uncertainties are, as already commented, to be resolved against the insurer and in favor of imposing liability.

Moreover, in *McConnell* v. *Underwriters at Lloyds of London* (1961), *supra,* 56 Cal.2d 637, 640-642 [6], we held that language which states that the policy applies to any accident "arising out of the . . . use of" a truck included an accident which arose out of the use of the truck to tow a negligently attached compressor which came loose on the highway during the towing, resulting in bodily injuries to other motorists. Similar construction of the provisions of General's policy here involved upholds its coverage of Hiatt for the accident which occurred while the Waldkirch truck was being loaded.

### *"Other Insurance" Clauses.*

 Each of the three policies contained an "other insurance" clause. The applicable portion of the "other insurance" clause of the Zurich (Waldkirch) policy provides: "Other Insurance. If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declaration bears to the total applicable limit of liability of all valid and collectible insurance against such loss. . . ."

The "other insurance" clause of the General (Simpson) policy states so far as here material: "Other Insurance . . . It is further provided that with respect to loss arising out of the . . . use of any non-owned automobile the applicable insurance afforded by this policy shall be *excess* over and above such other available insurance . . . ." (Italics added.) Continental's policy (issued to Hiatt) provides in its "other insurance" clause: "If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; *provided, however,* the insurance under this policy with respect to loss arising out of the . . . use of any non-owned or hired automobile shall be *excess* insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to such automobile or otherwise." (Italics added.)

Both the Zurich and the Continental policies further provide that "use of an automobile includes the loading and unloading thereof."

Thus, the "other insurance" clause of the Zurich policy provides for *pro rata* sharing of losses with other effective insurance, whereas both the General and the Continental policies provide that where, as here, the loss arises out of the use of a nonowned automobile the insurance provided by those policies shall be excess, as distinguished from pro rata primary insurance.

In *American Automobile Ins. Co.* v. *Republic Indemnity Co.* (1959) 52 Cal.2d 507, 511-513 [4-5] [341 P.2d 675], the automobile liability policy issued to the owner of the car as well as that issued to the driver provided that the coverage should be excess with respect to a nonowned car. This court

there stated (p. 512 of 52 Cal.2d) that "Where 'other insurance' clauses of this type appear in the automobile liability policies of both the driver and the owner, the cases have generally given effect to the excess provision in the policy of the driver and have held that the insurer of the owner is primarily liable and must bear the whole loss, within the limits of its policy. [Citations.]

". . . [P. 513] The only construction of the 'other insurance' clause under which both its parts will be meaningful is that the *excess* provision alone controls in every situation which falls within its terms . . . ." The judgment declaring that the owner's policy provided primary insurance and that of the driver provided excess insurance only, was affirmed. It is thus evident that under the quoted principles the trial court was correct in its view that the Zurich (Waldkirch-owner) policy provided primary insurance to Hiatt for the loading accident, and that the General and the Continental policies were excess only and should be prorated after the Zurich primary coverage had been exhausted. (See also *Truck Ins. Exchange* v. *Torres* (1961) 193 Cal.App.2d 483, 488-492 [2b-7] [14 Cal.Rptr. 408], and cases there cited.)

█ Zurich's suggestion that because Continental also covered Hiatt's general logging operations including operation of his loading equipment, as well as his automobile use, the excess clause of the Continental policy should not come into play is without merit, in view of the explicit language of the excess clause (with respect to the "use of any non-owned or hired automobile") and the specific policy definition of "use of an automobile" to include the loading and unloading thereof. █ "[W]hen general and specific provisions of a contract deal with the same subject matter, the specific provisions, if inconsistent with the general provisions, are of controlling force." (*Scudder* v. *Perce* (1911) 159 Cal. 429, 433 [114 P. 571].) The trial court was correct in its determination that General and Continental are liable on a pro rata basis for the balance of the judgment against Hiatt over and above the primary coverage provided by Zurich.

### Cost of Defending the Action Against Hiatt.

█ As already related, the total cost of defending Hiatt in the action brought against him by Gudger was paid by Continental, after Hiatt had demanded that Zurich and General defend him and they had refused. The trial court found that the $7,167.51 expended by Continental in the defense was reasonable and necessary and benefited both

Zurich and General, and ordered that all three companies share in the costs of defense in the same ratio that they share in paying the Gudger judgment against Hiatt. On appeal both Zurich and General argue that Continental is not entitled to contribution from them.

Each of the three policies provided that with respect to the policy coverage the company would "defend any suit against the insured alleging such injury . . . and seeking damages on account thereof, even if such suit is groundless, false, or fraudulent . . . ."

Two opposing views appear in the cases where the insured, or an insurer who has faithfully performed, has sought contribution from an insurer who refused to provide a defense. On the one hand it has been held that "where two companies insure the same risk and the policies provide for furnishing the insured with a defense, neither company can require contribution from the other for the expenses of the defense where one denies liability and refuses to defend. [Citation.] It has been stated that the duty to defend is personal to both insurers; thus neither is entitled to divide that duty with the other." (*Pacific Indem. Co. v. California State Auto. Assn.* (1961) 190 Cal.App.2d 293, 296-297 [2] [12 Cal.Rptr. 20]; see also *Columbia Southern Chemical Corp. v. Manufacturers & Wholesalers Indem. Exchange* (1961) 190 Cal. App.2d 194, 205 [11b] [11 Cal.Rptr. 762], and cases there cited; *Continental Casualty Co. v. Curtis Pub. Co.* (1938) 94 F.2d 710, 712 [4].) And in reaching the same conclusion the court in *Financial Indem. Co. v. Colonial Ins. Co.* (1955) 132 Cal.App.2d 207, 211 [2] [281 P.2d 883], noted that "the agreement to defend is not only completely independent of and severable from the indemnity provisions of the policy, but is completely different. Indemnity contemplates merely the payment of money. The agreement to defend contemplates the rendering of services."

On the other hand there are courts which, with little if any discussion of the point, appear to have found no difficulty in ordering pro rata sharing of defense expenses where coverage is provided by more than one insurer. (See *Oil Base, Inc. v. Transport Indem. Co.* (1956) 143 Cal.App.2d 453, 469-470 [299 P.2d 952]; see also *American F. & C. Co. v. Pennsylvania T. & F.M. Cas. Ins. Co.* (1960) 280 F.2d 453, 459, 460 [4], especially fn. 11; *General Acc. F. & L. Assur. Corp., Ltd. v. Smith & Oby Co.* (1959) 272 F.2d 581, 586 [6]; *Bituminous Cas. Corp. v. Travelers Ins. Co.* (1954) 122 F.Supp. 197,

204-205 [7].) We find no roadblocks to such a result and we think that the considerations which lead to it are more persuasive than any reasons suggested to the contrary. In this connection we note that any services contemplated by the agreement to defend are not personal in the sense that the services of any specifically named individual would be personal. Rather, such services necessarily contemplate the employment by the company of competent licensed attorneys and other personnel who, from a practical standpoint, must be viewed as rendering services to the company and for its benefit and the benefit of other obligated insurers, as well as for the benefit of the insured.

 Under general principles of equitable subrogation, as well as pursuant to the rule of prime importance—that the policy is to be liberally construed to provide coverage to the insured—it is our view that all obligated carriers who have refused to defend should be required to share in costs of the insured's defense, whether such costs were originally paid by the insured himself or by fewer than all of the carriers. A contrary result would simply provide a premium or offer a possible windfall for the insurer who refuses to defend, and thus, by leaving the insured to his own resources, enjoys a chance that the costs of defense will be provided by some other insurer at no expense to the company which declines to carry out its contractual commitments. As commented in another context by the court in *Employers etc. Ins. Co.* v. *Pacific Indem. Co.* (1959) 167 Cal.App.2d 369, 381 [11] [334 P.2d 658], quoting from *Massachusetts Bonding & Ins. Co.* v. *Car & Gen. Ins. Corp.* (1957) 152 F.Supp. 477, 482, ''there are . . . compelling reasons for allowing recovery when the other insurer has not entered the case at all or has refused to defend the insured against suit by the injured party. . . . [T]his view represents the current trend and better rule in the 'volunteer' situations.''

 The facts that the agreement to defend the insured may be severable from the general indemnity provisions, and that each insurer independently owes that duty to its insured, constitute no excuse for any insurer's failure to perform. The obligation to defend the insured is no less important than the contract to indemnify. In fact, where the insurer defaults in defending, the indemnity obligation will be held to cover all expenses reasonably incurred by the insured in providing his own defense. As we said in *Arenson* v. *National Auto. & Cas. Ins. Co.* (1957) 48 Cal.2d 528, 539 [5] [310

P.2d 961] : "Here the company agreed to defend any suit brought against Arenson in which damages for injury to property was alleged (see *Arenson* v. *National Auto. & Cas. Ins. Co.* (1955) 45 Cal.2d 81, 82 [286 P.2d 816]). Having defaulted such agreement the company is manifestly bound to reimburse its insured for the full amount of any obligation reasonably incurred by him. It will not be allowed to defeat or whittle down its obligation on the theory that plaintiff himself was of such limited financial ability that he could not afford to employ able counsel, or to present every reasonable defense, or to carry his cause to the highest court having jurisdiction, and that therefore he should not have had, and will not be allowed compensation for, an attorney who filled the breach. Sustaining such a theory would not only tend to discourage busy attorneys from rendering adequate services for needy clients but would tend also to encourage insurance companies to similar disavowals of responsibility with everything to gain and nothing to lose." In our view, it is but corollary to the above quoted proposition to hold, as we do, that no insurer which deliberately breaches its obligation to the insured should be permitted thereby to profit, whether at the expense of the insured, or of an insurer which faithfully discharges its obligation. The decisions in *Pacific Indem. Co.* v. *California State Auto. Assn.* (1961), *supra*, 190 Cal.App.2d 293, *Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exch.* (1961), *supra*, 190 Cal.App.2d 194, and *Financial Indem. Co.* v. *Colonial Ins. Co.* (1955), *supra*, 132 Cal.App.2d 207, are disapproved insofar as they are inconsistent with the conclusions hereinabove stated.

General urges, nevertheless, that the costs of defense should be paid by only the primary insurer, citing cases in which it appears that the court so ordered. In none of such cases is it shown, however, that the primary coverage was inadequate to indemnify the loss or that the excess policies would at all be reached, and no useful purpose would be served by discussing them further.

For the reasons stated, the judgment of the trial court is affirmed.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.

The petitions of appellants Zurich Insurance Company and of General Insurance Company of America for a rehearing were denied December 20, 1961.