415 F.2d 1182
 WOLVERINE INSURANCE CO., Plaintiff-Appellant,
v.
STATE AUTOMOBILE MUTUAL INSURANCE COMPANY OF COLUMBUS, OHIO,
Defendant-Appellee.
WOLVERINE INSURANCE CO., Plaintiff-Cross-Appellee,
v.
STATE AUTOMOBILE MUTUAL INSURANCE COMPANY OF COLUMBUS, OHIO,
Defendant-Cross-Appellant.
 Nos. 18981, 18982.
 United States Court of Appeals Sixth Circuit.
 Sept. 23, 1969.
 
 Russell E. Bowers, Flint, Mich., for appellant; Gault, Davison & Bowers, Flint, Mich., on brief.
 George L. McCargar, Jr., Grand Rapids, Mich., for appellee.
 Before O'SULLIVAN, PHILLIPS and EDWARDS, Circuit Judges.
 EDWARDS, Circuit Judge.
 
 
 1
 This appeal involves a suit between two insurance companies as to which, if either, should pay damages for an injury to one Beaudry. Plaintiff Wolverine sued defendant State Automobile to recover the amount of $45,000 Wolverine had paid to settle Beaudry's claim, plus the legal expense of $1,804.35 incurred prior to settlement. The District Judge found that both companies were primarily liable on the risk. Relying upon the apportionment clauses in both insurance contracts, he entered a judgment for plaintiff for one-tenth of the amount of Wolverine's claim. Both parties appeal.
 
 Most of the facts were stipulated:
 
 2
 '1. Ralph Beaudry was the sole proprietor of Beaudry Gravel & Excavating Company, and had been primarily engaged in the business of hauling gravel from 1950 until the spring of 1956, at which time he expanded his business activities to include the hauling of heavy road building and earth moving equipment, such as bulldozers and cranes. For such latter moving purposes he acquired in April 1956 a tractor and semi-trailer (commonly described as lo-boy). He began hauling heavy machinery for a number of contractors, one of which was Flint Road Building & Earth Moving Company.
 
 
 3
 '3. As to Flint Road Builders and other contractors, Beaudry made a charge of $10.00 per hour for his truck and driver for the hauling of heavy equipment, such time charges being computed from the time Beaudry left his garage to the time of his return. He prepared a 'ticket' for each haul, showing the time chargeable; and once every one or two months he would bill Flint Road Builders and the other contractors as to services rendered during the period. Beaudry himself paid the costs of fuel and of a truck operator incurred for each haul. He maintained at his own expense the vehicles he owned and used, including all repairs and replacements.
 
 
 4
 '4. Beaudry would undertake to haul equipment upon receiving a call from the office girl at Flint Road Builders who told him when and where to pick up the equipment, and where to deliver it. For each haul of equipment, Beaudry procurred a permit from the County Road Commission, with a determination made by him at that time of the specific route he would take to transport the equipment. No written contract existed between Beaudry and Flint Road Builders.
 
 
 5
 '5. On the morning of August 27, 1956, Beaudry and Richard Shipman, a crane operator employed by Flint Road Builders, met at the intersection where a crane was located, and they loaded 'mats' used to support the crane on soft soil. The crane had caterpillar-type tracks, with a boom supporting a cable to which was attached a bucket-type shovel. After the mats were transported by the lo-boy and truck-tractor to the Flint Road Builders yard, by Beaudry with Shipman riding with him, they returned to the same location to load the crane. Shipman directed Beaudry where to locate the truck for loading the crane. After skids were placed at the edge of the trailer so that the crane could be driven up an incline onto the bed of the trailer (which was about two feet above ground level), Shipman began to load the crane. After he lowered the shovel-bucket on the front end of the trailer, he proceeded to allow slack in the line to which the shovel was attached and which ran over the outer end of a boom and thence to a reel on the crane-tractor. As Shipman was driving the crane up the skids and onto the bed of the lo-boy trailer, the slack cable became entangled in the tractor tred. When Beaudry reached for the cable so as to free it, he received an electric shock. A contact was made between the boom and a high-tension transmission wire at a point where the cable passed over a pulley at the top of the up-right boom. The ground and the equipment were wet from a rainfall on that morning * * *.'
 
 
 6
 Beaudry sued Flint alleging that the negligence of Flint's employee caused his injuries. Flint's insurance company, Wolverine, tendered the defense to Beaudry's insurance company (State Auto) which rejected the tender. Wolverine then settled Beaudry's claim for $45,000. All parties herein concede that this was a reasonable settlement. Wolverine then sued State Auto, Beaudry's insurance company, on the theory that State Auto, as the public liability carrier on the lo-boy trailer, was liable upon Flint's risk.
 
 
 7
 The District Judge who heard this case held, however, that both parties were liable as insurers in relation to this rig and that the total damages (including the expense of the defense) should be proportioned between them in accordance with the coverages which they had contracted for. In the instance of Wolverine, this was $500,000, and in the instance of State Auto, it was $50,000. The District Judge entered a judgment for Wolverine for $4,680.43-- one-tenth of Wolverine's settlement and legal expense.
 
 
 8
 On appeal each party contends that it was not on the risk at the time. Wolverine also contends that if it was, it should be held only for excess coverage after State Auto had paid its limit. State Auto also disputes any liability to wolverine for legal expenses.
 
 
 9
 Like the District Judge, we believe that the lo-boy trailer was a 'hired automobile' within the meaning of the Wolverine policy and that Wolverine was on the risk. Certainly the lo-boy trailer was being 'used under contract on behalf of' Flint Road Builders at the time in question.
 
 
 10
 The right to control of equipment is generally regarded as the critical distinction between the 'hired automobile' and the 'nonowned automobile' for insurance contract purposes. American Casualty Co. of Reading v. Denmark Foods, 224 F.2d 461 (4th Cir. 1955). The stipulation of facts allows the inference drawn by the District Judge that Flint's employee was in control of the lo-boy at the time of the accident. Continental Casualty Co. v. Zurich Insurance Co., 57 Cal.2d 27, 17 Cal.Rptr. 12, 366 P.2d 455 (1961); Consolidated Mutual Insurance Co. v. Bankers Insurance Co. of Pa., 244 Md. 392, 223 A.2d 594 (1965); Wostal v. Travelers Insurance Co., 239 F.Supp. 395 (S.D. Texas 1965).
 
 
 11
 We also agree with the District Judge that State Auto was likewise liable on the risk. It had issued a general accident liability policy to Beaudry listing the lo-boy trailer as an insured vehicle. Flint had requested and received a certificate as to this insurance made out by State Auto's agent. We agree with the District Judge that the endorsements relied on by State Auto were ambiguous. Under Michigan law ambiguity in an insurance contract is construed in favor of coverage and against the insurer which drafted the policy. Sutton v. Hawkeye Casualty Co., 138 F.2d 781 (6th Cir. 1943); Pawlicki v. Hollenbeck, 250 Mich. 38, 229 N.W. 626 (1930).
 
 
 12
 This, then, leaves only the question as to whether or not the District Judge was correct in apportioning the damages and the legal expenses of the defense. We believe that he was. Both policies had standard apportionment clauses. And the 'excess insurance' clause relied upon by Wolverine is not applicable in the use of a 'hired automobile.' This term we have previously held to be applicable to the lo-boy trailer involved in this accident.
 
 
 13
 Further, Wolverine had tendered the defense to State Auto and had been refused. There is no question presented as to the reasonableness of the expenses for which Wolverine seeks recovery. State Auto was primarily liable on the risk and had contracted to defend it. Under these circumstances we believe it should bear its proportionate share of the expense. Continental Casualty Co. v. Zurich Insurance Co., 57 Cal.2d 57, 17 CalRptr. 12, 366 P.2d 455 (1961); Bituminous Cas. Corp. v. Travelers Ins. Co., 122 F.Supp. 197 (Minn., 4th Div. 1954). See also American Fidelity & Casualty Co. v. Pennsylvania T. & F.M. Cas. Ins. Co., 280 F.2d 453, 459 (5th Cir. 1960); General Acc. F. & L. Assur. Corp., Ltd. v. Smith & Oby Co., 272 F.2d 581, 586 (6th Cir. 1960). Contra United States Fidelity & Guar. Co. v. Tri State Ins. Co., 285 F.2d 579 (10th Cir. 1960).
 
 
 14
 In one respect, however, correction of the judgment as entered is required. The District Judge apportioned the damages by relating State Auto's policy limit of $50,000 to Wolverine's policy limit of $500,000. The apportionment clauses both provided for the apportionment to be related to 'the total applicable limit of liability of all valid and collectible insurance.' (i.e. $50,000 to $550,000). This means that State Auto is liable for one-eleventh of the total claim ($4,254.94) as opposed to the one-tenth ($4,680.43) employed by the District Judge.
 
 
 15
 The judgment of the District Court is affirmed as modified above.