**Firemen's Insurance Co. v. Ketner**

*Markowitz, Kagen & Griffith,* for plaintiff.

*Geisenberger, Zimmerman, Pfannebecker & Atlee, Notturno, Russell, Kraft & Gurber, Hartman, Underhill & Brubaker* and *Barley, Snyder, Cooper & Barber,* for defendants.

MUELLER, *J.,* October 25, 1979—On March 27, 1979, plaintiff, Firemen's Insurance Company (hereinafter Firemen's), filed a petition for declaratory judgment requesting the court to construe two insurance policies issued by Firemen's and American State Insurance Company (hereinafter American) to Denlinger, Inc. Answers were filed by American, Ronald J. Ketner, Unclaimed Freight Company & Liquidation Sales, Inc. and Ketner Enterprises, Inc. No answer was filed on behalf of Denlinger, Inc., although the record reflects personal service of the petition on the President of Denlinger, Inc., on April 6, 1979 and the entry of appearance on May 23, 1979 of a local law firm for Denlinger, Inc.*

The petition for declaratory judgment arises out of another lawsuit styled Ronald J. Ketner, Unclaimed Freight & Liquidation Sales, Inc., and Ketner Enterprises, Inc., plaintiffs v. H. W. Nauman & Son, Inc., Denlinger, Inc., Gordon C. Woodland and William F. Landis, defendants, also filed in the Court of Common Pleas of Lancaster County, Pennsylvania, to no. 116, August term, 1978. That lawsuit involves a loss due to the col-

---

*Firemen's petition did not contain an endorsement with notice to plead within 15 days from service as required by the Act of May 22, 1935, P.L. 228, sec. 2, as amended, 12 P.S. §848(a) which is still in effect. [Editor's note: The Act of May 22, 1935 is repealed as of June 27, 1980. See now 42 Pa.C.S.A. §1722(a)(1).]

lapse of a roof and supporting understructure, which allegedly was built, erected and designed by the various defendants in that action. Shortly after the filing of that action, representatives of Firemen's, which had issued the primary liability insurance policy to Denlinger, investigated the loss and determined to pay its policy limits, $250,000, to plaintiffs in that action. The payment of its policy limits by Firemen's has been accomplished and is not disputed by American.

American had issued an excess liability policy to Denlinger. American has refused to take over the defense of the lawsuit indexed to no. 116, August term, 1978. This refusal is evidenced by the admission contained in paragraph 10 of American's answer.

Firemen's requested the court to construe both policies of insurance and declare that Firemen's is entitled to withdraw its appearance on behalf of Denlinger and that American is required to enter its appearance and defend Denlinger in the trespass action. American's answer to the petition requests that the court "construe the policies of insurance and determine whether both, neither, or one of them is presently in force and affords coverage to" Denlinger, Inc.

The declaratory judgment procedure is the appropriate one to determine questions of coverage and duty to defend under liability insurance policies, and all persons who have or claim any interest which would be affected by the declaration are parties to this proceeding: Act of July 9, 1976, P.L. 586, no. 142, sec. 2, effective June 27, 1978, 42 Pa.C.S.A. §7531 et seq.; Liberty Mutual Insurance Co. v. S.G.S. Co., 456 Pa. 94, 318 A. 2d 906 (1974).

The critical language from each of the policies is here quoted at length.

"FIREMEN'S INSURANCE COMPANY OF NEWARK NEW JERSEY COMPREHENSIVE GENERAL LIABILITY INSURANCE

1. Coverage A—Bodily Injury Liability

Coverage B—Property Damage Liability

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A. Bodily injury or

B. Property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, *but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.*" (Emphasis supplied.)

"AMERICAN STATE INSURANCE COMPANY

II. Defense Settlement

With respect to any occurrence not covered by an underlying policy listed in Schedule A hereof or any other underlying insurance collectible by the Insured, but covered by the terms and conditions of this policy except for the amount of retained limit specified in Item 3(C) of the declarations, the company shall:

(a) defend any suit against the Insured alleging such injury or destruction and seeking damages on account thereof, even if that suit is groundless,

false or fraudulent, but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

(b) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish any such bonds;

(c) pay all expenses incurred by the company, all costs taxed against the Insured at any such suit and all interest accruing after entry of judgment until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;

(d) reimburse the Insured for all reasonable expenses, other than loss of earnings, incurred at the company's request;

and the amounts so incurred, except settlements of claims and suits are payable by the company in addition to the applicable limit of liability of this policy.

In jurisdictions where the company may be prevented by law or otherwise from carrying out this agreement, the company shall pay any expense incurred with its written consent in accordance with this agreement.

The Insured shall promptly reimburse the company for any amount of ultimate net loss (except Defense Costs) paid on behalf of the Insured within the retained limit specified in Item 3(C) of the declarations.

## CONDITIONS

E. Assistance and Cooperation. *Except as provided in Insuring Agreement II (Defense, Settlement) or in Insuring Agreement VI (Retained*

*Limit—Limit of Liability) with respect to the exhaustion of the aggregate limits of underlying policies listed in Schedule A or in Condition J the company shall not be called upon to assume charge of the settlement or defense of any claim made or proceeding instituted against the Insured;* but the company shall have the right and opportunity to associate with the Insured in the defense and control of any claim or proceeding reasonably likely to involve the company. In such event the Insured and the company shall cooperate fully.

J. Underlying Insurance. *If underlying insurance is exhausted by any occurrence, the company shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the Insured resulting from the same occurrence, but only where this policy applies immediately in excess of such underlying insurance, without the intervention of excess insurance of another carrier."* (Emphasis supplied.)

Both Firemen's and American agree that under ordinary circumstances the payment of policy limits does not discharge an insurance carrier's duty to defend its insured. See Simmons v. Jeffords, 260 F. Supp. 641 (E.D. Pa. 1966). Firemen's argues that since its insured had the foresight to obtain excess coverage for liability with American and the policy limits have been paid by Firemen's, there is no longer a duty to defend. While Firemen's makes reasonable policy arguments why American should be required to take over the defense, Firemen's is bound by its own contract language. If Firemen's did not want to continue to provide a defense in this situation, the policy could have so stated. It is a long standing rule of law in Pennsylvania that an insur-

ance policy is to be construed against the insurer where the terms of the policy are ambiguous or uncertain: Penn-Air, Inc. v. Indemnity Ins. Co. of N.A., 439 Pa. 511, 269 A. 2d 19 (1970); Shamey v. State Farm Mut. Auto. Ins. Co., 229 Pa. Superior Ct. 215, 331 A. 2d 498 (1974). Firemen's policy under "Comprehensive General Liability Insurance" states that, ". . . the company shall not be obligated . . . to defend any suit after the applicable limit of the company's liability has been exhausted by *payment of judgments or settlements*." (Emphasis supplied.) There is agreement by all parties to this proceeding that there are no judgments. The court determines that there have been no settlements of the suit for damages.

The term "settlement" means settlement of litigation. "A settlement of litigation is a compromise agreement comprised of all the traditional elements of a contract." School District of Philadelphia v. Franlau Corp., 15 Pa. Commonwealth Ct. 621, 627, 328 A. 2d 866 (1974). In this case there is a traditional element of settlement missing—the end of litigation. Firemen's has only received a receipt from the plaintiffs acknowledging receipt of the sum of $250,000 which "amount is paid on account of any verdict or judgment which may be entered against Denlinger, Inc. . . ." The court finds no ambiguity in the policy language and determines that Firemen's still has a duty to defend Denlinger in the suit. Neither insurance company has cited any Pennsylvania decision relating to the duty to defend in this type of situation. American referred to the case of Continental Casualty Co. v. Zurich Insurance Co., 57 Cal. 2d 27, 366 P. 2d 455 (1961), where the question was whether or not an insurer which has coverage but refuses to defend must share in the defense expenses incurred by the

insurance company which defended the insured. The trial court had found that each policy issued by three different insurance companies covered the insured. The California court held that all obligated carriers which refused to defend were required to share in the costs of the insured's defense. The California court reasoned that the duty to defend arose from the language in each policy without regard to the course followed by one of the carriers. The duty to defend an insured is no less important than the contract to indemnify the insured.

A reading of paragraph J under the section designated "Conditions" in American's policy is not ambiguous. The "underlying insurance" provided by Firemen's is "exhausted" by the occurrence which precipitated the suit. American "shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the Insured resulting from the same occurrence. . . ." American's policy affords coverage to Denlinger, Inc. Firemen's as the primary insurer should not be solely responsible for either the duty to defend or the cost of defense particularly where the primary coverage has been paid and is inadequate to cover the loss and in view of the language in American's policy, the only excess insurance coverage.

## DECREE

And now, October 25, 1979, in this declaratory judgment proceeding the court determines that both Firemen's Insurance Company and American State Insurance Company under the provisions of their respective insurance policies have a duty at this time to defend their insured Denlinger, Inc. in the case of Ronald J. Ketner, Unclaimed Freight

Company & Liquidation Sales, Inc., and Ketner Enterprises, Inc. v. H. W. Nauman & Son, Inc., Denlinger, Inc., Gordon C. Woodland and William F. Landis, no. 116, August term, 1978.