980 F.2d 736
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CONTINENTAL CASUALTY COMPANY, Plaintiff-Appellee,
v.
The HOME INSURANCE COMPANY, Defendant-Appellant.
 No. 91-35816.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 9, 1992.**
Decided Dec. 4, 1992.
 
 Before POOLE, FERNANDEZ and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The Home Insurance Company (Home) appeals the district court's summary judgment that its "claims made" professional liability policy provided primary coverage, and a "claims made" policy issued by Continental Casualty Company (CNA) provided excess coverage. We reverse.
 
 BACKGROUND
 
 3
 CNA issued a professional liability policy on a claims made basis to the law firm of Lyon, Beaulaurier, Weigand, Suko and Gustafson (Lyon), which was effective from February 1, 1989 to February 1, 1990. Home provided claims made professional liability coverage which was effective from February 1, 1990 to February 1, 1991. Each policy had a $3,000,000 per claim limit.
 
 
 4
 On February 2, 1990, a former client made a claim against Lyon. Lyon reported the claim to Home. On March 1, 1990, Lyon exercised its option to purchase an extended reporting period (ERP) under the CNA policy, which extended the time for reporting claims from February 1, 1990 to February 1, 1993. Lyon thereafter submitted the claim to CNA, pursuant to the ERP endorsement. CNA acknowledged coverage and accepted defense of the claim. Home concluded that its policy was excess to CNA's coverage.
 
 
 5
 CNA commenced this diversity action for a declaratory judgment determining the rights of CNA and Home under the two insurance policies, for indemnity from Home for $195,000 paid in settlement of the claim, and for reimbursement of its defense costs in the amount of $47,423.51.
 
 
 6
 The CNA policy provided that it was a claims made policy which only covers claims made during the reporting period, plus any extension. It was, in general, a primary policy. However, it also contained an "other insurance" clause which provided that "other insurance which applies to the loss" would pay first and CNA's coverage would be excess. The Extended Reporting Schedule purchased by Lyon on March 1, 1990 was effective as of February 1, 1990. The endorsement provided that "[a]ll claims reported during such extended reporting period shall be considered as being reported during the last policy term."
 
 
 7
 The policy issued by Home, was, in general, a primary policy in which Home agreed to pay claims first made against Lyon during the policy period. However, it had the limitation that if a "prior policy" provided coverage Home's policy would be excess coverage. The Home policy also contained an "other insurance" clause which limited Home's coverage to excess over "any other valid and collectible insurance available to the Insured."
 
 
 8
 On cross-motions for summary judgment, the district court concluded that the CNA policy expired by its terms on February 1, 1990 and the purchase of the ERP endorsement was no different from purchase by Lyon of a new policy from CNA. Therefore, the court held, because the CNA policy was not in existence from February 1, 1990 to March 1, 1990 when the claim was made against Lyon and reported to Home, it did not constitute a prior policy which would excuse Home from providing primary coverage. The district court determined that Home was the primary insurer and CNA was excess to Home.
 
 DISCUSSION
 
 9
 We begin with the general principle that when policy language is clear and unambiguous, it must be enforced as written. Wolf Bros. Oil Co., Inc. v. International Surplus Lines Ins. Co., 718 F.Supp. 839, 841 (W.D.Wash.1989) (applying Washington law).
 
 
 10
 Although Lyon did not purchase the ERP until March 1, 1990, the ERP endorsement expressly states that it was effective as of February 1, 1990. The endorsement does not exclude claims made against Lyon prior to payment of the ERP premium. At the time the claim was made against Lyon, CNA had already committed, through the option contained in the policy, to provide ERP coverage if Lyon paid the additional premium. Lyon timely paid the premium and received ERP coverage for the thirty-day gap between the expiration of the policy and payment of the ERP premium. Lyon's claim is deemed to have been reported to CNA during the policy term. The plain language of the ERP endorsement compels the conclusion that the endorsement does not constitute a new policy.
 
 
 11
 In addition, the differing functions of an insurance policy and ERP coverage support the conclusion that the two documents are considered one policy. The function of the ERP is to extend the time to report claims; it does not provide insurance coverage for acts which occur during the extended period. In contrast, one would expect a new policy to provide full coverage. See Wolf Bros., 718 F.Supp. at 843.
 
 
 12
 Because the ERP endorsement does not constitute or create a new policy, we must determine if the CNA policy and that endorsement constitute a prior policy in the sense that the Lyon claim is not covered by the Home policy except as excess. In our opinion, in the unusual context of two competing claims made policies, the Home provision does not have that effect. Rather, as applied in this claims made context, the provision's location in the coverage portion of the policy is not different from a standard other insurance clause. Cf. Dairyland Ins. Co. v. Ward, 517 P.2d 966, 969 (Wash.1974) (en banc) (placement of purported exclusion in general coverage provisions simply added to ambiguity; exclusion would be construed most favorably to insured); D'Angelo v. Cornell Paperboard Prods. Co., 207 N.W.2d 846, 849 (Wis.1973) (insuring clause does not override other parts of policy). The dispute between CNA and Home is quite the same as a typical "other insurance" dispute. Thus, the principles which animate the handling of those disputes apply equally here. Of course, the Home policy also has a separate other insurance clause which would apply to the dispute in any event. Therefore, the Home policy does provide that CNA must pay first and that Home will pay any excess.
 
 
 13
 However, the CNA policy, through its other insurance clause, also provides that "other insurance which applies to the loss" must pay first and that CNA will only pay any excess. Moreover, its clause, unlike Home's coverage clause, specifically refers to other claims made policies. Therefore, the CNA policy does provide that Home must pay first and that CNA will pay any excess.
 
 
 14
 When two primary policies both purport to be excess under certain circumstances, and literal construction of each policy results in neither having to pay, the policies are mutually repugnant and the court will require each insurer to pay a proportionate share. Indiana Ins. Co. v. Mission Nat'l Ins. Co., 874 F.2d 631, 634 (9th Cir.1989) (citing Pacific Indem. Co. v. Federated Am. Ins. Co., 76 Wash.2d 249, 456 P.2d 331, 332 (1969) (en banc), overruled on other grounds, Mission Ins. Co. v. Allendale Mut. Ins. Co., 95 Wash.2d 464, 626 P.2d 505, 506-07 (1981) (en banc)).
 
 
 15
 CNA contends that the Court should not apply the "repugnancy" theory but should, instead, consider the overall insuring intent of the parties. For that proposition it cites Allstate Ins. Co. v. Frank B. Hall & Co., 770 P.2d 1342, 1346 (Colo.Ct.App.1989), and Continental Volvo, Inc. v. Ross, 562 P.2d 1002, 1003 (Wash.Ct.App.1977). However, it appears that the garage liability policy in Continental Volvo was intended to be excess for all purposes. 562 P.2d at 1003-04. Moreover, Frank B. Hall simply stands for the unremarkable proposition that where one policy is intended to be a true excess or umbrella policy, proration will not be required. 770 P.2d at 1347-48. It is very unlikely that Washington would look to some further extrinsic evidence of insuring intent where, as here, each policy, generally speaking, provides primary coverage to the insured. Where neither policy was purchased as a true excess policy, the better approach is to prorate. Cf. Continental Cas. Co. v. Zurich Ins. Co., 57 Cal.2d 27, 36-37, 17 Cal.Rptr. 12, 366 P.2d 455 (1961). A different rule might well lead to an impasse between insurers to the detriment of the insured or might simply reward the most obstreperous insurer, situations that courts try to avoid. See, e.g., id., 57 Cal.2d at 37. Thus, the liability of Home and CNA for the claim and defense costs should be prorated. Indiana Ins., 874 F.2d at 634.
 
 CONCLUSION
 
 16
 The judgment of the district court is REVERSED and the case is REMANDED for a determination of the amount to be prorated to each of the parties.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3