[Civ. No. 14848. Third Dist. Mar. 18, 1976.]

GWEN FRATIS, as Administratrix, etc., Plaintiff and Respondent, v.
FIREMAN'S FUND AMERICAN INSURANCE COMPANIES,
Defendant and Appellant.

## COUNSEL

Trezza, Ithurburn, Keeley, Steidlmayer & Bower, Keeley, Guthrie & Ruddick, Terence J. Keeley and Mark G. Steidlmayer for Plaintiff and Respondent.

Cyril Viadro for Defendant and Appellant.

## OPINION

**FRIEDMAN, J.**—In August 1965 plaintiff's husband was killed in an automobile collision with a car driven by William McConkey. Her wrongful death action resulted in a damage judgment against McConkey. Plaintiff then filed the present action on the judgment, seeking

recovery from Fireman's Fund American Insurance Companies (Fireman's Fund), which had issued an automobile liability policy to McClatchy Newspapers.[1] Her theory was that McConkey had been an additional insured under the McClatchy policy. A jury trial resulted in a verdict against Fireman's Fund, which appeals from the judgment.

In plaintiff's wrongful death action McClatchy Newspapers was an unserved defendant. At the time of the accident McConkey was working under a commission contract as a subscription solicitor for the McClatchy firm. The written contract provided McConkey an automobile mileage allowance away from his "home base." While the wrongful death suit was pending, McConkey received a discharge in bankruptcy and disappeared from the scene. His attorney withdrew from the action. Plaintiff's attorneys then informed Fireman's Fund and McClatchy Newspapers by letter that plaintiff intended to take a default judgment against McConkey. Fireman's Fund decided against undertaking defense of the lawsuit. Plaintiff then dismissed McClatchy Newspapers as a defendant, took McConkey's default, presented evidence before the trial court and was awarded a $300,000 damage judgment against McConkey.

In July 1969, closely on the heels of the judgment entry, McConkey reappeared and moved under Code of Civil Procedure section 675b for cancellation of the judgment, alleging his discharge in bankruptcy.[2] The trial court directed cancellation of the judgment, and this court affirmed the order by an opinion filed October 5, 1970. (*Fratis* v. *McConkey,* 3 Civ. 12544, unpublished opinion.) Mrs. Fratis, the judgment creditor, then instituted the present action against Fireman's Fund.

The only issue raised by appellant is whether McConkey became an additional insured under the McClatchy automobile policy as the driver of a "hired automobile." The facts are not in dispute; neither are the

---

[1]Insurance Code section 11580, subdivision (b)(2), requires that every liability policy contain: "(2) A provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

[2]Code of Civil Procedure section 675b declares: "At any time after one year has elapsed since a bankrupt was discharged . . . he may apply, upon proof of his discharge, to the court in which a judgment was rendered against him . . . for an order directing the judgment to be canceled and discharged of record. . . . If it appears that the judgment or debt has been discharged, an order shall be made directing such judgment to be canceled and discharged of record. . . ."

terms of the policy. The appeal involves an issue of law, a question of interpreting an insuring clause as applied to undisputed facts. (*Pacific Indem. Co.* v. *Truck Ins. Exch.*, 270 Cal.App.2d 700, 702 [76 Cal.Rptr. 281].)[3]

The Fireman's Fund policy covered the named insured and "any person while using an owned automobile or a hired automobile . . . provided the actual use of the automobile is by the named assured or with his permission . . . ."

The policy defined a hired automobile as one "used under contract in behalf of . . . the named insured provided such automobile is not owned by or registered in the name of . . . an employee or agent of the named insured who was granted an operating allowance of any sort for the use of such automobile."

The policy also contained an exclusion clause designed to restrict coverage of a hired automobile. We shall quote it at a later point of this opinion.

Fireman's Fund contends that a vehicle used under contract became a hired automobile (as defined by the policy) only if the contract gave the policyholder possession or control of the vehicle and only if its use was the objective of the contract. Fireman's Fund points out that the McClatchy contract had an objective other than use of the vehicle; that the vehicle was used only incidentally in the performance of the contract objective. We reject the contention. McConkey had a contract with McClatchy which permitted him a mileage allowance. He was driving his automobile "under" .or by virtue of this contract. At the time of the accident he was en route to a destination for the purpose of soliciting subscription sales for a McClatchy newspaper. Thus he was using the vehicle "in behalf of," that is, for the purposes and objectives of McClatchy Newspapers, the named insured. McConkey was neither an

---

[3] Because the lawsuit pivots on an issue of law, the jury verdict is entitled to no intendments whatever on appeal. No law prevents a party from demanding a jury trial in a case like this. Common sense should do so. The lawyers in this action wasted public and private time and money in a cumbersome, five-day jury trial to try a question of insurance law which could have been submitted to the trial court as an agreed case. The record on appeal does not indicate which side demanded a jury trial, and we'd rather not know.

employee nor agent of the named insured.[4] All the conditions demanded by the policy definition of "hired automobile" were present.

To classify McConkey's vehicle as a hired automobile within the policy definition requires no resort to the familiar rule which resolves policy ambiguities in favor of coverage. (See *Continental Cas. Co. v. Zurich Ins. Co.*, 57 Cal.2d 27, 32-33 [17 Cal.Rptr. 12, 366 P.2d 455].) The facts of the case fit foursquare and irrefragably within the definition. The insurance carrier's argument would insert implied restrictions in the insuring agreement, contrary to settled principles of insurance policy interpretation.

At this point of its argument Fireman's Fund relies upon *Continental Cas. Co. v. Hartford Acc. & Indem. Co.*, 213 Cal.App.2d 78 [28 Cal.Rptr. 606], and *Government Employees Ins. Co. v. St. Paul Fire etc. Ins. Co.*, 243 Cal.App.2d 186 [52 Cal.Rptr. 317]. Neither decision is in point. The former revolved around the identity of the party who hired the vehicle, not its status as a hired automobile. The latter decision involved no contractual use whatever.

We reject defendant's argument that McClatchy Newspapers could not give McConkey permission to drive his own car. "The [policy] language in question plainly refers to actual consent, not some theoretical concept." (*Osborne v. Security Ins. Co.*, 155 Cal.App.2d 201, 208 [318 P.2d 94].) McConkey had McClatchy's consent to use his vehicle to solicit subscriptions for McClatchy. He was thus driving with the latter's permission.

Finally, Fireman's Fund invokes the exclusion clause mentioned earlier. The clause declares: "The insurance with respect to any person or organization other than the named insured does not apply . . . with respect to any hired automobile, to the owner or a lessee thereof other than the named insured or to any agent or employee of such owner or lessee . . . ."

The McConkey automobile, as we have concluded, was a hired automobile, and it was driven by its owner, a person other than the

---

[4]The subscription solicitation contract between the newspaper firm and McConkey specifically informed the latter that he would "act as an independent contractor and not as an employee . . . ." Moreover, in response to plaintiff's request for admissions, Fireman's Fund specifically took the position that McConkey was not an employee or agent of McClatchy Newspapers.

named insured. In unambiguous terms, the exclusion clause was designed to deny coverage to McConkey at the time of the accident. The coverage question turns upon the legality of the exclusion clause. At the heart of the inquiry is the well-known *Wildman* doctrine, which denies validity to policy exclusions if they defeat statutory demands for coverage. (See *Metz v. Universal Underwriters Ins. Co.,* 10 Cal.3d 45, 50 [109 Cal.Rptr. 698, 513 P.2d 922].)

In August 1965, when the McConkey-Fratis accident occurred, section 11580.1 of the Insurance Code declared: "No policy of [automobile] liability insurance . . . shall be issued . . . unless it contains the following provisions: . . . ¶ (b) Provision designating by explicit description or by appropriate reference all motor vehicles with respect to which coverage is intended to be granted. . . . ¶ (d) Provision insuring the insured named therein and to the same extent that coverage is afforded such named insured in respect to said described motor vehicles, any other person using, or legally responsible for the use of, said motor vehicles, provided the motor vehicles are being used by the named insured or with his permission, express or implied."[5]

As enacted in 1963, subdivision (d), of section 11580.1 expressed a public policy requiring coverage of permissive users of insured automobiles. (*Metz v. Universal Underwriters Ins. Co., supra,* 10 Cal.3d at pp. 50-51.) In *Metz* the court invalidiated a clause excluding coverage of vehicles owned by the policyholder "while rented to others." The insurance carrier had argued that the clause did not exclude permissive users but rather a class of vehicles, thus, that it did not violate the statutory demand for permissive user coverage. The court rejected the argument, declaring (10 Cal.3d at p. 53): ". . . the definitive characteristic of the excluded class of vehicles lies in the fact that they are operated by a class of permissive users; hence, in practical effect the exclusion denies coverage to this class of permissive users."

The exclusionary clause of the Fireman's Fund policy suffers from the identical vice revealed in *Metz.* In expressing the exclusion, the policy

---

[5]The quoted language reflects the language of section 11580.1, as enacted by Statutes of 1963, chapter 1259. Later amendments recast the entire section. At present the permissive user requirement appears in section 11580.1, subdivision (b)(4), reading as follows: "Provision affording insurance to the named insured with respect to any motor vehicle covered by such policy, and to the same extent that insurance is afforded to the named insured, to any other person using, or legally responsible for the use of, such motor vehicle, provided such use is by the named insured or with his permission . . . ."

uses words describing a class of vehicles but actually denying coverage to a class of permissive users.

Fireman's Fund seeks to distinguish *Metz*—there the vehicle was owned by the policyholder; here the vehicle was not. The distinction is not significant. As subdivision (b) of the statute read in 1965, it required the policy to designate the insured vehicles either "by explicit description or by appropriate reference." These alternate methods of designation had significance. Automobile liability policies commonly designate the policyholder's owned vehicles by make, model and serial number. Such a description, in statutory parlance, is a designation by "explicit description." Policies also cover nonowned vehicles which the insured may use temporarily in the future. The identity of these vehicles is unknown when the policy is issued; hence they must be designated by a reference other than an individual description. Typical of the latter designations are temporary substitute automobiles or, as here, hired automobiles. As the statute read in 1965, the latter terminology conformed to subdivision (b) as a designation "by appropriate reference." Subdivision (d) in turn demanded permissive user coverage of all the described vehicles, whichever the method of designation. In short, subdivision (d) required permissive user coverage of any and all vehicles designated in conformity with subdivision (b).

As set out in footnote 5, *ante,* subdivision (b)(4) presently declares that permissive user coverage must extend to any vehicle covered by the policy. The current language was the product of an amendment which occurred after the McConkey-Fratis accident. (Stats. 1970, ch. 300.) It was apparently designed to make plain what the statute's earlier version had necessarily implied. We conclude that the exclusion clause of the Fireman's Fund policy violated section 11580.1, subdivision (d), as it read at the time of the accident; that McConkey's permissive use of the hired automobile was therefore covered by the policy.

By a happy coincidence the lay jurors reached a verdict consistent with the result demanded by a technical inquiry into the language of the policy and by technical, judicial analysis of the Insurance Code provisions.

Judgment affirmed.

Puglia, P. J., and Evans, J., concurred.