[Civ. No. 24013. Third Dist. Dec. 10, 1984.]

CALIFORNIA STATE AUTOMOBILE ASSOCIATION INTER-INSURANCE BUREAU, Plaintiff and Respondent, v. LAWRENCE GONG, Defendant and Appellant.

## Counsel

Turner & Sullivan and Theodore T. N. Slocum for Defendant and Appellant.

Bolling, Walter & Gawthrop, Craig E. Farmer and George E. Murphy for Plaintiff and Respondent.

## Opinion

**SPARKS, J.**—In this appeal we consider the statutory restrictions on the exclusion of permissive users in automobile liability policies. We hold that

the restrictions only apply to covered vehicles owned or legally controlled by the named insured. Plaintiff California State Automobile Association Inter-Insurance Bureau (CSAA) received a favorable declaratory judgment determining that an automobile liability insurance policy it issued to John SooHoo did not cover liability arising out of an automobile accident involving his son. The accident occurred when John's minor son, Darryl SooHoo, was driving a car not owned by John. Defendant Lawrence Gong, a passenger in the automobile driven by Darryl at the time of the accident, appeals. We shall affirm.

## FACTS

This coverage dispute arises out of an automobile accident occurring on April 25, 1981, when a 1980 Plymouth Champ owned by Gerry SooHoo, and operated by his brother Darryl, collided with another vehicle. Gong, a passenger in the Plymouth, suffered severe injuries in the accident. Darryl and Gerry are the natural sons of John and May SooHoo, and at the time of the accident both brothers were residents of their parents' household.

Two CSAA policies were in effect at the time of the accident. One policy was issued to John as the named insured, with the described vehicle being a 1977 Ford Granada owned by John. John's policy provided liability limits of $50,000 per person and $100,000 per occurrence. The other was a CSAA policy issued to Gerry, with the 1981 Plymouth owned by Gerry as the described automobile. Gerry's policy provided liability limits of $25,000 per person and $50,000 per occurrence.

Gong filed suit in Sacramento Superior Court against Darryl and Gerry to recover damages for bodily injuries sustained in the accident. Pursuant to a settlement agreement, CSAA paid Gong the $25,000 per person limit on Gerry's policy. The parties also agreed to litigate by this declaratory relief action (initiated by CSAA) the question whether John's policy afforded any coverage to Darryl for Darryl's liability, if any, to Gong as a result of the accident.

It was CSAA's position at trial that no coverage was provided Darryl under the terms of John's policy. CSAA principally relied on the policy definition of a "non-owned automobile." Generally speaking, the policy provides coverage for both owned and nonowned vehicles. The policy definition of a "non-owned automobile," however, excludes an automobile owned by a resident of the named insured's household. As noted, both Darryl and Gerry were residents of the same household as John. The trial court agreed with CSAA that Darryl was not driving either an owned or a

nonowned automobile, as those terms are defined in the policy, at the time of the accident. The trial court consequently held that no coverage was provided Darryl under John's policy. The court alternatively ruled that no coverage was provided because Darryl did not have permission, express or implied, from either his brother Gerry or his father John to drive Gerry's car. This appeal followed.[1]

## DISCUSSION

Gong claims the policy definition of "non-owned automobile" violates the statutory policies contained in the Insurance Code. CSAA asserts the exclusion is proper because nothing in the Insurance Code requires coverage for nonowned automobiles. We agree with CSAA.

Preliminarily, we set forth the relevant insurance policy provisions contained in "PART I—LIABILITY" of John's policy. They provide generally that CSAA will ". . . pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages, other than punitive or exemplary damages, because of: [¶] (a) bodily injury . . . sustained by any person; . . . [¶] arising out of the ownership, maintenance or use of *the owned automobile or any non-owned automobile, . . .*" (Italics added.)

In this case, the coverage provided for the use of an "owned automobile" is irrelevant because the Plymouth owned by Gerry does not constitute an owned automobile within the meaning of John's policy.[2] Gong does not contend otherwise.

We are thus concerned solely with the coverage provided for the use of nonowned automobiles. We set forth in the margin[3] the list of those insured

---

[1]Gerry's liability as the owner of the Plymouth was extinguished under the settlement which paid the limits of Gerry's policy. Neither Gerry nor his CSAA-issued policy is involved in this appeal.

[2]The policy defines an "owned automobile" as "a private passenger . . . automobile owned by the named insured and described in the declaration and for which a specific premium charge indicates that coverage is afforded, . . ." The vehicle described in the declaration in John's policy is the 1977 Ford Granada owned by John. The policy also defines an owned automobile as a trailer owned by the named insured, a newly acquired automobile and a temporary substitute automobile. No issue is raised here concerning these types of vehicles.

[3]"PERSONS INSURED

"The following are insureds under Part 1: . . .

"(b) With respect to a non-owned automobile, [¶] (1) the named insured, provided the actual use thereof is with the permission of the owner,

"(2) any relative, but only with respect to a private passenger automobile, utility auto-

under the policy with regard to a nonowned automobile. The policy in turn defines a "non-owned automobile" as "an automobile . . . *not owned by* or furnished for the regular use of either *the named insured or any resident of the household of which the named insured is a resident,* . . . except that a private passenger . . . automobile . . . owned by a relative and insured by [CSAA], shall be considered a non-owned automobile while operated by the named insured; . . ." (Italics added.)

A reading of these provisions makes manifest that no coverage under John's policy was provided Darryl for his use of his brother's Plymouth. While coverage is provided to all insureds for injuries arising out of the ownership, use or maintenance of "non-owned automobiles," the policy in clear, plain and conspicuous terms defines a "non-owned automobile" as one *not* owned by any resident of the household of the named insured. The Plymouth was owned by Gerry, a resident of the household of John SooHoo, CSAA's named insured; it thus was not a nonowned automobile at the time of the accident.

It is true that the definition of "non-owned automobile" includes (i.e., extends coverage to) a CSAA-insured vehicle owned by a member of the named insured's household when that vehicle is driven by the named insured. This coverage, however, in equally clear and plain terms, is limited to the *named insured* only. Darryl is not the named insured under John's policy. Thus, as to Darryl, the Plymouth was *not* a nonowned automobile, and no coverage is provided Darryl for his use of that vehicle.

I

Gong contends CSAA owes Darryl excess (excess over that already provided under Gerry's policy) coverage under the provisions of the "Other

---

mobile or trailer, provided the actual use thereof is with the permission of the owner, and

"(3) any other person or organization not owning or hiring the automobile, but only with respect to his or its liability because of acts or omissions of an insured under (b)(1) or (2) above. . . .

"DEFINITIONS

" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

" '*named insured*' means the individual named in Item 1 of the declaration and also includes his spouse, if a resident of the same household;

" '*insured*' means a person or organization described under 'Persons Insured';

" '*relative*' means a relative of the named insured by blood or marriage who is a resident of the named insured's household; . . ."

Insurance" clause contained in John's policy.[4] Gong misreads these provisions. Excess coverage is provided only if there is an insurable loss covered under part I (dealing with owned and nonowned automobiles) of the policy. Because there is no such coverage for this accident, the "Other Insurance" clause has no application.[5]

## II

Gong retorts that even if John's policy does not expressly provide coverage for Darryl while driving his brother's car, coverage must be afforded as a matter of law. Gong notes that under the terms of the nonowned automobile clause, coverage would have been provided to John had he been operating Gerry's car. Gong contends this identical coverage must be extended to Darryl, an insured under the policy, by virtue of the mandate of Insurance Code section 11580.1, subdivision (b)(4) (hereafter, all statutory references are to the Insurance Code).

Section 11580.1, subdivision (b)(4) states in relevant part: "(b) Every policy of automobile liability insurance to which subdivision (a) applies shall contain all of the following provisions: . . . [¶] (4) Provision affording insurance to the named insured with respect to any motor vehicle covered by such policy, and to the same extent that insurance is afforded to the named insured, to any other person using, or legally responsible for the use of, such motor vehicle, provided such use is by the named insured or with his permission, express or implied, and within the scope of such permission, . . ."

Gong misconstrues the statute. Section 11580.1 was enacted to "carr[y] on the legislative policy of protecting those persons injured by the negli-

---

[4]The "Other Insurance" clause reads: "If the insured has other insurance against a loss covered by Part 1 of this policy, [CSAA] shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability provided under 'LIMITS OF LIABILITY' bears to the total applicable limit of liability of all such other insurance against such loss except: [¶] "(a) the insurance afforded by Part 1 shall be excess over any other insurance with respect to a temporary substitute automobile or a non-owned automobile; . . ."

[5]Insurance Code section 11580.9, subdivision (d), dealing with primary and excess coverage when two or more policies cover the same loss, provides: "Except as provided in subdivisions (a), (b), and (c), where two or more policies affording valid and collectible liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which the motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess." Here the motor vehicle which was described or rated as an owned automobile was John's 1977 Ford Granada. John's car was not involved in any accident or occurrence giving rise to liability.

gence of permissive users by requiring that all policies, certified or noncertified, include permissive user coverage." (*Metz* v. *Universal Underwriters Ins. Co.* (1973) 10 Cal.3d 45, 51 [109 Cal.Rptr. 698, 513 P.2d 922].) Thus, it is the exclusion of permissive users, not vehicles, which is prohibited by section 11580.1, subdivision (b)(4). "[N]o statute or public policy requires an insurer to cover all vehicles owned by the named insured." (*Ibid.*) But once a vehicle is "covered" by insurance and the named insured, as the owner, is afforded protection for that vehicle, then insurance must also be afforded "to the same extent . . . to any person using . . . such motor vehicle, provided such use is . . . with [the named insured's] permission, express or implied, and within the scope of such permission . . . ." (§ 11580.1, subd. (b)(4).) ■ Thus, section 11580.1, subdivision (b)(4), simply requires that a policy issued to the owner of an automobile provide equal liability coverage for operation of the insured vehicle by one using it with the consent of the policyholder. (*U-Haul Co. of Southern Cal., Inc.* v. *State Farm Mut. Auto. Ins. Co.* (1975) 50 Cal.App.3d 665, 669 [123 Cal.Rptr. 628].)

"Section 11580.1 does not require coverage for the permissive use of nonowned vehicles. . . . The only coverage required for permissive use is with respect to vehicles designated in the policy." (*State Farm Mut. Auto. Ins. Co.* v. *MacKenzie* (1978) 85 Cal.App.3d 727, 732 [149 Cal.Rptr. 747].) Section 11580.1, subdivision (b)(2) does, however, require that all automobile liability policies contain a "[d]esignation by explicit description of, or appropriate reference to, the motor vehicle . . . to which coverage is specifically granted." The vehicle covered by explicit description in John's policy is his 1977 Ford Granada. The class of vehicles designated in the policy by appropriate reference is a "non-owned automobile." As its name implies, and as we have already noted, a nonowned automobile is defined in the policy as one "not owned by or furnished for the regular use of either the named insured or any resident . . . ." ■ The car involved in the accident was owned by Gerry and he was a resident of John's household. Gerry's car is therefore not covered under John's policy.

It is true that the policy further provides that an automobile "owned by a relative and insured by [CSAA] shall be considered a non-owned automobile while operated by the named insured." But this extension of coverage is not applicable here because John, the named insured, was not operating his son's vehicle at the time of the accident. In short, an automobile owned and operated by a relative is not a covered vehicle under the policy.

Nothing in section 11580.1, subdivision (b)(4), compels us to construe this extension of coverage as a prohibited exclusion. By its terms, this sub-

division requires that the use of a covered vehicle be with the named insured's "permission, express or implied, and within the scope of such permission . . . ." This statute necessarily presupposes that the named insured either owns or has some legal authority over the vehicle so that he can grant permission for its use. Absent some delegation of authority by the owner, a stranger has no legal right to give permission to a third party to use someone else's car. Even assuming the "initial permission" rule[6] prevails in California, the named insured must still have a legal right to give permission in the first instance. It is not enough that Gerry may have consented to the use of his car by his brother. ▉ When the named insured does not own or legally possess a vehicle, the permission of the owner is not sufficient to give an operator protection under the named insured's policy. "[S]imply put, the only persons who [are] able to give the requisite permission are such persons who have the right and power to control the vehicle." (12 Couch, Insurance (2d rev. ed. 1981) § 45:372, pp. 734-735.)

Gong's interpretation would stand the statute on its head. Under his construction, whenever coverage would be provided for the named insured, it must also be extended to every other insured and permissive user no matter who owns or controls the car. Taken to its logical conclusion, John's policy, under this interpretation, would apply if Gerry had been driving his own car at the time of the accident. This on the rationale that if John had been permissively driving Gerry's car he would have been covered. As the Court of Appeal noted in an analogous situation in *Interinsurance Exchange* v. *Macias* (1981) 116 Cal.App.3d 935 [172 Cal.Rptr. 385], "[a]n automobile liability policy is not one of general liability coverage. [The injured claimant] would have us transform the policy here into one by affording a coverage which neither [the insured] nor Insurer could reasonably have contemplated." (*Id.*, at p. 939, citations omitted.) So too would Gong. We therefore reject his strained construction.

It is true that the named insured need not own the vehicle in order to have authority to give permission and hence for the statute to apply. (*Fratis* v. *Firemen's Fund American Ins. Companies* (1976) 56 Cal.App.3d 339, 345 [128 Cal.Rptr. 391].) In *Fratis* the policy extended coverage for the use of "an owned or a hired automobile" but purported to exclude coverage for a

---

[6]The liberal or so called "initial permission" rule declares "that if a person has permission to use an automobile in the first instance, any subsequent use while it remains in his possession though not within the contemplation of the parties is a permissive use within the terms of the omnibus clause [of the policy]." (*Jordan* v. *Consolidated Mut. Ins. Co.* (1976) 59 Cal.App.3d 26, 37-38 [130 Cal.Rptr. 446].) Whether this rule applies to permissive user coverage under section 11580.1, subdivision (b)(4) is problematical. (*Id.*, at p. 36; see also *Hartford Accident & Indemnity Co.* v. *Abdullah* (1979) 94 Cal.App.3d 81 [156 Cal.Rptr. 254].)

hired vehicle when used by its owner. We noted that although the named insured did not own the hired vehicle, he had consented to its use by the owner on the insured's behalf. We therefore held that the exclusionary clause exempting coverage for owners using hired vehicles under contract on behalf of the named insured violated section 11580.1, subdivision (b)(4) because it denied coverage to a class of permissive users. But in such a case the named insured had a legal right of control over the hired vehicle, just as he would over a temporary substitute automobile under the policy at issue here. An exclusion of permissive users of a substitute automobile, like that of a hired vehicle, would improperly deny coverage to a class of permissive users in violation of the statute. Although we concluded in *Fratis* that "subdivision (b)(4) presently declares that permissive user coverage must [be] extend[ed] to any vehicle covered by the policy" (56 Cal.App.3d at p. 345), the vehicle in this case was not covered by either the policy or the statute. The upshot of all this is that section 11580.1, subdivision (b)(4) simply does not apply to a nonowned vehicle over which the named insured has no legal power. John did not own, rent, borrow, possess or otherwise have any authority over his adult son's car and hence had no legal power to give permission for its use. Gerry's vehicle was not the family car and was not used for any family purpose on the day of the accident. Needless to say, mere residency in the household of a named insured does not constitute a grant of authority to the policyholder to use, or permit the use of, the resident's car. Since the policy does not provide coverage and because the statute does not compel any, CSAA was entitled to a judicial declaration of no coverage.

We emphasize that this is not a case of permitting "the insurer by adroit wording to evade the statutory requirement for coverage of permissive users." (*Metz* v. *Universal Underwriters Ins. Co., supra,* 10 Cal.3d at p. 52.) It is, instead, a case of an insurer providing additional protection to its named insureds when their relatives also have CSAA policies on their own cars. The result we reach consequently is not inconsistent with the public policy expressed in the statute to afford " ' " "monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others." ' " (*Id.,* at p. 53; citations omitted.) The injured party here was statutorily entitled to, and in fact did, recover damages under the liability policy of the owner of a car driven by a permissive user. The statute requires nothing more.

### III

Gong asserts the definition of "non-owned automobile," which denies coverage to Darryl because he was driving a vehicle owned by a mem-

ber of the named insured's household, constitutes an impermissible exclusion under the provisions of 11580.1, subdivision (c). As our discussion has foretold, we once again disagree.

Section 11580.1, subdivision (c), provides that a policy of automobile liability insurance may be made "inapplicable" to eight specific situations.[7]  ■   As we explained in *Phelps* v. *Allstate Ins. Co.* (1980) 106 Cal.App.3d 752, 756 [165 Cal.Rptr. 263], that subdivision "contains all of the exclusions permissible in California automobile insurance policies." (See also Melnick, Cal. Automobile Insurance Law Guide (Cont.Ed.Bar 1973) p. 88.) Any exclusion not expressly authorized by section 11580.1 is therefore impermissible and invalid. (*Contreras* v. *America, Compania General De Seguros, S.A.* (1975) 48 Cal.App.3d 270, 281 [121 Cal.Rptr. 694].)

Article 2 of part 3 of division 2 of the Insurance Code (§§ 11580-11589) expresses the total public policy in California respecting the content of policies not issued as proof of ability to respond in damages or under the California Assigned Risk Plan. (§ 11580.05; Veh. Code, § 16450; see *State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co.* (1970) 9 Cal.App.3d 508, 522-526 [88 Cal.Rptr. 246].) As to policies issued before accidents, the sections contained in this article of the Insurance Code govern the required

---

[7]Section 11580.1, subdivision (c) provides: "In addition to any exclusion as provided in paragraph (3) of subdivision (b), the insurance afforded by any such policy of automobile liability insurance to which subdivision (a) applies, including the insurer's obligation to defend, may, by appropriate policy provision, be made inapplicable to any or all of the following: [¶] (1) Liability assumed by the insured under contract. [¶] (2) Liability for bodily injury or property damage caused intentionally by or at the direction of the insured. [¶] (3) Liability imposed upon or assumed by the insured under any workers' compensation law. [¶] (4) Liability for bodily injury to any employee of the insured arising out of and in the course of his employment. [¶] (5) Liability for bodily injury to an insured or liability for bodily injury to an insured whenever the ultimate benefits of that indemnification accrue directly or indirectly to an insured. [¶] (6) Liability for damage to property owned, rented to, transported by, or in the charge of, an insured. A motor vehicle operated by an insured shall be considered to be property in the charge of an insured. [¶] (7) Liability for any bodily injury or property damage with respect to which insurance is or can be afforded under a nuclear energy liability policy. [¶] (8) Any motor vehicle or class of motor vehicles, as described or designated in the policy, with respect to which coverage is explicitly excluded, in whole or in part. [¶] The term 'the insured' as used in paragraphs (1), (2), (3), and (4) shall mean only that insured under the policy against whom the particular claim is made or suit brought. The term 'an insured' as used in paragraphs (5) and (6) shall mean any insured under the policy including those persons who would have otherwise been included within the policy's definition of an insured but, by agreement, are subject to the limitations of paragraph (1) of subdivision (d)."

The "exclusion as provided for paragraph (3) of subdivision (b)" clause relates to the requirement that every policy governed by the statute shall contain a "[d]esignation by explicit description of the purposes for which coverage for such motor vehicle is specifically excluded." (§ 11580.1, subd. (b)(3).)

contents of an automobile liability policy. (*State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co., supra,* 9 Cal.App.3d at pp. 522-526.) As we have recounted earlier, there is nothing within these Insurance Code sections, or within any public policy in California, which dictates requirements for coverage of nonowned automobiles. (*U-Haul Co. of Southern Cal., Inc. v. State Farm Mut. Auto. Ins. Co., supra,* 50 Cal.App.3d at p. 669; see *State Farm Mut. Auto. Ins. Co.* v. *MacKenzie* (1978) 85 Cal.App.3d 727, 732 [149 Cal.Rptr. 747].) Consequently, the insurer may lawfully limit coverage to certain types of vehicles, including vehicles not owned by the named insured. (*State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co., supra,* 9 Cal.App.3d at p. 526.) ▮ Although CSAA has elected to extend coverage to the named insured when he is driving a CSAA-insured automobile owned by a member of his household, the fact that such coverage is not provided to every member of the named insured's household does not mean the policy contains an impermissible exclusion. In short, a limited extension of coverage not mandated by statute is not an exclusion.

Because we conclude that John's policy does not provide coverage for his son's permissive use of a car not owned or controlled by John, we need not address the question of whether Darryl's use of Gerry's car was in fact with his brother's permission.

The judgment is affirmed.

Evans, Acting P. J., and Mering, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.